IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOBBIE METROKA-CANTELLI,

                Plaintiff,                Case No. 3:12 CV 242

    -vs-

                                          MEMORANDUM OPINION

POSTMASTER GENERAL,

                Defendant.

KATZ, J.

      Plaintiff Bobbie Metroka-Cantelli brought this suit against her former employer, the United States Postal Service, contending it violated her rights under the FMLA and breached a collective bargaining agreement when it terminated her prior to her taking FMLA leave.[1] She also brought this action against Branch 118 of the National Association of Letter Carriers, asserting the union breached its duty to advocate on her behalf and conspired to discriminate against her. Both the USPS and the NALC Branch 118 have separately moved for summary judgment, which Ms. Metroka-Cantelli opposes. In its reply brief, the USPS argues some of Ms. Metroka-Cantelli's evidence in opposition to summary judgment is inadmissible and the Court should disregard it.

**I. Background**

      Ms. Metroka-Cantelli was a "Transitional Employee" of the USPS for a number of years. (Metroka-Cantelli Decl., Doc. 35-2 at ¶ 1.) At the USPS, Transitional Employees are non-career employees and are appointed yearly without a guarantee of continuing employment. (Rohrbacher Decl., Doc. 33-3 at ¶¶ 7–8.) They are, however, bargaining unit employees represented by the NALC. (Brown Decl., Doc. 30-2 at ¶ 2.)

---

[1] The suit names both the USPS and the Postmaster; the Court treats them as one for the purpose of this opinion.

The USPS employed Ms. Metroka-Cantelli by reappointing her yearly from 2004 until 2010. (Metroka-Cantelli Decl., Doc. 35-2 at ¶ 1.) In mid-2010, Ms. Metroka-Cantelli was pregnant and says she began the process of lining up FMLA leave for when the baby was due. She spoke to her supervisor, Margaret "Susan" Gliatta, who told her to apply for FMLA leave in anticipation of the baby's arrival. (Gliatta Decl., Doc. 33-1 at ¶ 6.) Ms. Metroka-Cantelli contacted the USPS' human resources department to inquire about FMLA leave and the FMLA coordinator, Bernice Mazeke, spoke with her on or about April 8, 2010. (Mazeke Decl., Doc. 33-2 at ¶ 17.) Ms. Mazeke says Ms. Metroka-Cantelli "indicated that she was pregnant, but would not be due until sometime in the future." (*Id.*) Nevertheless, Ms. Mazeke sent Ms. Metroka-Cantelli an FMLA request packet. (*Id.* at ¶ 18.) The USPS requires that the FMLA packet be completed and returned within 15 days of the FMLA coordinator sending it out, but the USPS did not receive a return packet from Ms. Metroka-Cantelli. (*Id.* at ¶¶ 13, 20–23.)

On May 5, 2010, the USPS notified Ms. Metroka-Cantelli that she would: "be separated from the Postal Service on May 15, 2010 upon completion of your appointment." (Notice of Separation, Doc. 33-7.)

Ms. Metroka-Cantelli contacted NALC Branch 118 union steward Curtis Brown to ask for his help in getting her position back or getting another position. (Brown Decl., Doc. 30-2 at ¶ 3.) Mr. Brown assisted Ms. Metroka-Cantelli to some extent (Harpel Decl., Doc. 35-5 at ¶¶ 3–7), but he insists he did so just "as a personal attempt to help Ms. Metroka-Cantelli." (Doc. 30-2 at ¶ 4.) Thereafter, he refused to further help. (*Id.*; Doc. 35-5 at ¶ 8.) Mr. Brown, who is the union steward for NALC Branch 118, insists he is not Ms. Metroka-Cantelli's union steward because she was stationed in Norwalk, Ohio, which is represented by NALC Branch 583. (Doc. 30-2 at ¶ 4.)

2

Ms. Metroka-Cantelli brought this action against the USPS, asserting it violated her rights under the FMLA and breached the collective bargaining agreement between the USPS and the NALC. She also brought the action against NALC Branch 118, asserting it conspired with the USPS to deprive her of her rights under the FMLA, that it breached its duty to fairly represent her, and that it discriminated against her in violation of Ohio law.

## II. Jurisdiction

The Court has subject matter jurisdiction over the two claims against the USPS both because the claims arise under federal law (the FMLA, 29 U.S.C. §§ 2601 *et seq.* and the LMRA, 289 U.S.C. § 141 *et seq.*) and because the USPS is a federal defendant. 28 U.S.C. §§ 1331, 1339; 39 U.S.C. § 1208(b). The conspiracy claim against the NALC Branch 118 arises under the FMLA and the claim that the union breached its duty to fairly represent Ms. Metroka-Cantelli also arises under federal law, so the Court has jurisdiction over those claims. 28 U.S.C. § 1331. The Court has subject matter jurisdiction to decide the state law claim against the NALC Branch 118 because it is so related to the federal claims against the both the USPS and the union "that they form part of the same case or controversy." 28 U.S.C. § 1367.

## III. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

3

317, 323 (1986) (quotations omitted). Once the movant meets this burden, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Thus, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012).

### IV. Analysis

#### A. FMLA claims against USPS

The FMLA provides up to twelve weeks of unpaid leave for an employee "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). Employers may not interfere with an employee's FMLA rights. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

Ms. Metroka-Cantelli claims the USPS violated her right to take FMLA leave by terminating her before she could exercise her upcoming leave request. The Sixth Circuit recognizes "two discrete theories of recovery under the FMLA: (1) the so-called "interference" or

4

"entitlement" theory arising from § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). "The significant difference between an interference and a retaliation claim is the causal connection element, which encompasses an employer's intent; in contrast to the interference theory, under the retaliation theory, 'the employer's motive is an integral part of the analysis.'" *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009) (quoting *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)).

Ms. Metroka-Cantelli does not declare which theory she is pursuing and uses language from both interchangeably.

**1. Retaliation**

To establish a prima facie case of FMLA retaliation, Ms. Metroka-Cantelli must show: (1) she was engaged in a statutorily protected activity; (2) the USPS knew she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 681 F.3d at 283.

A retaliation claim is used where the employee receives FMLA benefits, but the employer takes action against her as a result. *Cf. Id.* at 282–83 (finding that where an employee received all the FMLA leave to which he was entitled, but was terminated on his return to work, his claim is exclusively one for retaliation, not interference). Ms. Metroka-Cantelli cannot move forward on her FMLA retaliation claim because she cannot establish the first element: that she was engaged in a statutorily protected activity. Not only did she not get to the point of taking the leave, Ms. Metroka-Cantelli cannot even show she made a proper FMLA leave request before the USPS

5

declined to renew her contract. *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013) (absent unusual circumstances, an employer may require employees to follow certain procedures in requesting FMLA leave); *Edgar*, 443 F.3d at 512 ("What makes the employment decision unlawful under the [retaliation] theory is the motive of the employer—namely, that the action was taken *because* the employee exercised, or complained about the denial of, FMLA-protected rights." (emphasis in original)).

With no more than talk of some future intent to take FMLA leave, Ms. Metroka-Cantelli has not pointed to evidence indicating she was engaged in a statutorily protected activity so she has not shown a prima facie case, *Seeger*, 681 F.3d at 283, for discrimination or retaliation under the FMLA. (Mazeke Decl., Doc. 33-2 at ¶¶ 9–23 (detailing the USPS' FMLA request procedure and averring that Ms. Metroka-Cantelli never completed the request).)

**2. Interference**

A plaintiff bringing an interference claim under the FMLA must demonstrate: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Unlike a retaliation, claim, the employer's intent is not directly relevant to the interference analysis. *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008). Nevertheless, the employer's intent may have indirect relevance: if an employer can proffer a legitimate business reason for its action – one unrelated to interfering with FMLA rights –, the burden shifts back to the employee to refute the proffered reason. *Donald v. Sybra, Inc.*, 667 F.3d

6

757, 762 (6th Cir. 2012) (adopting the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework for FMLA interference claims).

The USPS says that Ms. Metroka-Cantelli cannot show any evidence as to the third, fourth, and fifth elements (although it incorporates an analysis of the first element into its analysis of the third element). Perhaps under the mistaken belief that the *McDonnell Douglas* burden-shifting framework does not apply to interference claims, the USPS does not address whether it had a legitimate reason for its action in its section regarding interference, but does address this issue in its retaliation section. Even if the Court extrapolates the USPS' burden shifting argument from the retaliation theory to its argument against the interference theory, Ms. Metroka-Cantelli can show some evidence of pretext and avoids summary judgment.

### a. Entitlement to Leave

The USPS claims Ms. Metroka-Cantelli was not entitled to FMLA leave (the third element, see *Walton*, 424 F.3d at 485), but it provides no legal authority for this assertion and, instead, uses a supervisor's declaration in place of legal authority. (Motion, Doc. 33 at 10.) It argues that because Ms. Metroka-Cantelli's employment ended every year, she was not eligible for FMLA leave prior to her May 15, 2010 termination because she had not shown her pregnancy to require time off, and she was not eligible for FMLA leave after her termination because then she was just a former employee whose contract was not renewed.

The USPS is correct that Ms. Metroka-Cantelli cannot show she was entitled to leave prior to her May 15, 2010 termination; she has pointed to no evidence suggesting she had a serious health condition (whether it was the pregnancy or something else) that rendered her unable to perform her job at any point before her termination. *See* 29 U.S.C. § 2612 (a)(1)(D). She mentions

7

that her pregnancy was high risk, and that may have qualified under 29 C.F.R. § 825.120(a)(4), but she points to no evidence of any incapacitating incident.

The USPS also suggests that Ms. Metroka-Cantelli was not entitled to FMLA at the time of her child's birth in July 2010 because it came after the USPS opted not to renew her yearly contract position. This is where the USPS merges its analysis of the third element with the first because it is essentially a claim that Ms. Metroka-Cantelli would not be "eligible employee" (someone who has been employed by that employer for at least 12 months and 1,250 hours) by the time of her due date. 29 C.F.R. § 2611(2)(A); *see Walton*, 424 F.3d at 485 (requiring plaintiffs to show they are eligible employees). According to the USPS' argument, by the time the July due date arrived, Ms. Metroka-Cantelli was two months past her contract's expiration date and, therefore, was not an eligible employee.

The USPS has provided no independent legal support for this contention. Instead, the argument goes to the heart of this case's question: whether the USPS interfered with Ms. Metroka-Cantelli's right to FMLA leave by terminating her before she could take the leave. On one hand, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401. On the other hand, if the plaintiff can point to some evidence that the pending FMLA leave prompted the dismissal, the USPS is not entitled to summary judgment. *Id.* at 402.

In effect, the USPS is saying that if it could terminate Ms. Metroka-Cantelli for any legitimate reason, then, by terminating her, it could not have interfered with any right to take FMLA leave that occurs after the termination. (Motion, Doc. 33 at 10–11.) By this logic, if an

8

employer had to make a reduction in force, it could intentionally choose to eliminate the one person who had upcoming FMLA leave just to avoid the employee's exercise of that leave. This is in direct contradiction to the prohibition against interfering with an employee's exercise of her FMLA rights, 29 U.S.C. § 2615(a), and the outcome in *Arban*. 385 F.3d at 402 ("[T]he jury was entitled to find in Arban's favor if he presented sufficient evidence to establish that he was denied his substantive rights under the FMLA for a reason connected with his FMLA leave." (citation and quotation marks omitted)).

The USPS does not dispute that Ms. Metroka-Cantelli's longevity and hours worked with the USPS qualified her for FMLA leave, had it not terminated her. It also does not dispute her pregnancy and the fact that she would have been entitled to FMLA leave upon the arrival of her child. The USPS has provided no legal authority and the Court cannot otherwise find legal authority holding Ms. Metroka-Cantelli was not entitled to FMLA leave at the time of her due date just because the USPS terminated her prior. Therefore, for these purposes, Ms. Metroka-Cantelli can show some evidence she was an eligible employee who would have been entitled to FMLA leave.

### b. Notice to the USPS

The USPS claims Ms. Metroka-Cantelli did not give it notice that she wished to take FMLA leave. The record does not support this argument. The USPS itself submitted Ms. Metroka-Cantelli's supervisor's declaration where she says: "[s]ometime in March or April of 2010, Plaintiff told me that she was pregnant and I suggested that Plaintiff apply for FMLA leave." (Gliatta Decl., Doc. 33-1 at ¶ 6.)

9

The USPS invokes case law holding an employer can terminate or discipline an employee who fails to follow the employer's FMLA leave request procedure and stops showing up to work. *Srouder*, 725 F.3d at 615 (citing 29 C.F.R. § 825.302(d)). This is not at issue here, however; Ms. Metroka-Cantelli first told the USPS of her upcoming leave request around three months before she would have taken it and she still had plenty of time to put in a proper request for leave before the due date. She did not properly request leave according to USPS policy, but she also did not miss work or claim entitlement to leave, so the *Srouder*.

The USPS provides no legal support holding this notice requirement applicable to an FMLA interference claim and case law indicates the opposite. In fact, in an FMLA interference claim, an employee need not even invoke the name of the FMLA as long as the notice is sufficient: "While the employee need not actually mention the FMLA by name, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)); *accord Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004) ("[T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job."). To find that an employer could terminate any employee who provided notice that she would take FMLA leave in the future but who had not yet properly applied for leave according to company policy, would frustrate the intent of the FMLA's ban on interference with rights provided by the Act.

FMLA regulation requires employees provide "at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth . . . ." 29 C.F.R. § 825.30(a). With a mid-July due date, Ms. Metroka-Cantelli would have been obligated to provide notice to the USPS by mid-June. Thus, she did not violate company policy or the FMLA by failing to complete her FMLA request paperwork in April. She also missed no work due to medical conditions, so *Srouder*, 725 F.3d at 613, is inapposite. What remains is straightforward: Ms. Metroka-Cantelli can show she informed the USPS of her intention to take FMLA leave when her baby came and this satisfies the notice standard as it relates to a claim of interference with future FMLA leave.

### c. Denial of the Benefit

The USPS claims that Ms. Metroka-Cantelli cannot show it ever denied her FMLA leave because she never completed the leave request paperwork and never gave the USPS the opportunity to approve or deny the leave. Once again, this is not a requirement; the statute prohibits interference with "the exercise of *or the attempt to exercise*" FMLA rights. 29 U.S.C. § 2615(a)(1) (emphasis added).

Clearly, any termination denies future FMLA leave time simply because an employee cannot take leave once she is no longer employed. This, however, does not make every otherwise legitimate termination actionable under the FMLA. *E.g.*, *Clark v. Walgreen Co.*, 424 Fed.App'x. 467, 474 (6th Cir. 2011) (rejecting the plaintiff's claim that the defendant interfered with his future FMLA leave by terminating him after he returned from leave because he could not demonstrate he was entitled to future leave since his doctor had cleared him to return to work and gave no indication he would change that opinion). Yet, on the other hand, the FMLA's

11

accompanying regulation broadens interference claims to include those in which an employee has not made a formal request:

> Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA, for example:
> (1) Transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act;
> (2) Changing the essential functions of the job in order to preclude the taking of leave;
> (3) Reducing hours available to work in order to avoid employee eligibility.

29 C.F.R. § 825.220(b).

Because interference includes more than just denying properly made leave applications, the denial of the benefit element must include more than just denying applications. The USPS does not dispute that Ms. Metroka-Cantelli would have been entitled to leave if she remained employed when her baby arrived, so this case is distinguishable from *Clark*, in which the court found no evidence that the plaintiff would actually have been entitled to future FMLA leave. Since interference with an FMLA benefit includes reducing an employee's hours so that she will no longer qualify for leave, it must also include terminating an employee in order to deny leave.

Because Ms. Metroka-Cantelli was entitled to leave in a matter of weeks after the USPS terminated her, the termination denied her the benefit to which she was otherwise due and this satisfies this element.

**d. Burden-Shifting**

Ms. Metroka-Cantelli can show a prima facie case of FMLA interference because she has evidence on each necessary element. However, because she relies on indirect evidence to establish her prima facie case of interference, the USPS may still obtain summary judgment if it can proffer

12

"a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace*, 521 F.3d at 670 (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). Courts use the *McDonnell Douglass* burden-shifting framework to test whether "the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination."*Donald*, 667 F.3d at 762 (noting the Sixth Circuit adopted the *McDonnell Douglas* test for FMLA interference claims in *Grace*).

In moving for summary judgment on the interference theory of Ms. Metroka-Cantelli's FMLA claim, the USPS did not proffer a reason for its employment action that would shift the burden back to Ms. Metroka-Cantelli. Instead, it only focused on whether Ms. Metroka-Cantelli could show some evidence on three of the five elements necessary to establish a prima facie case. Nevertheless, the USPS did specifically invoke the *McDonnell Douglas* burden-shifting analysis when it claimed it was entitled to summary judgment on the FMLA retaliation claim. The Court need not decide whether the USPS' invocation of the *McDonnell Douglas* framework in the context of Ms. Metroka-Cantelli's FMLA retaliation claim is sufficient to shift the burden on her interference claim because Ms. Metroka-Cantelli has some evidence of pretext even if the Court did shift the burden to her:

Because the USPS claimed, in the FMLA retaliation analysis, that the instruction to reduce Transitional Employees (essentially a reduction in force of one employee) was its legitimate business reason for terminating Ms. Metroka-Cantelli, the Court will assume for this purpose that would assert this reason in the interference analysis. Since a reduction of force is a legitimate business purpose, this proffer would shift the burden back to Ms. Metroka-Cantelli to point to some evidence refuting the reason. "[A] plaintiff can refute the legitimate, nondiscriminatory

13

reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace*, 521 F.3d at 670 (quotation marks and citations omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *accord Lindsay v. Yates*, 578 F.3d 407, 422 (6th Cir. 2009).

Ellen Rohrbacher, the Post Office Operations Manager, says that in spring of 2010, a district level "Complement Committee" assessed caps imposed by the union agreement and determined she needed to eliminate one Transitional Employee in the district. (Rohrbacher Decl., Doc. 33-3 at ¶¶ 10–11, 16–17.) She chose to execute this by not renewing Ms. Metroka-Cantelli's position when it expired in May 2010. (*Id.* at ¶ 18.) She says she selected Ms. Metroka-Cantelli as the employee to eliminate because Ms. Metroka-Cantelli was the Transitional Employee whose contract was next to expire. (*Id.*) Ms. Rohrbacher claims she did not know that Ms. Metroka-Cantelli was pregnant or that she was in the process of requesting FMLA leave. (*Id.* at ¶ 19.) The USPS terminated Ms. Metroka-Cantelli on May 5, 2010 by sending a letter informing her that it would not reappoint her when her term expired ten days later. The USPS also claims that on May 20, 2010 (five days after it terminated Ms. Metroka-Cantelli), "USPS Headquarters issued a memorandum that hiring of all [Transitional Employees] was suspended." (*Id.* at ¶ 20; Granholm Letter, Doc. 33-8.)

In contrast, Ms. Metroka-Cantelli says she can show that the USPS started advertising to hire Transitional Employees immediately after notifying her of her termination. She attaches a

14

random set of documents to support this claim. In its reply, the USPS objects to some of Ms. Metroka-Cantelli's evidence. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Evidence entered in opposition to summary judgment need not be admissible, but must demonstrate that the plaintiff can enter some admissible evidence at trial that raises a question of fact. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex*, 477 U.S. at 324). When the USPS has not objected to evidence, however, it has waived that objection for purposes of considering the opposition to summary judgment. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007) (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)). In such a case, the Court must assure itself only that use of the evidence would not create a gross miscarriage of justice. *Wiley*, 20 F.3d at 226.

The first of Ms. Metroka-Cantelli' six pieces of evidence supporting her claim that the USPS sought more Transitional Employees at the same time it terminated her (and declined to hire her back), appears to be a district newsletter dated May 14, 2010 with a blurb entitled, "More Temporary Relief Carriers Needed." (Doc. 35-3 at 1.) The USPS notified Ms. Metroka-Cantelli on May 5, 2010 that her last day would be May 15, 2010, so this evidence, if admitted, tends to show that the USPS was hiring to fill that position (or another) at the same time. Ms. Metroka-Cantelli simply entered the exhibit itself on the docket as entry 35-3, however, without a supporting declaration explaining or describing its contents or source.

In spite of objecting to multiple exhibits on various grounds, the USPS does not object to this newsletter's authenticity. It objects to the "undated handwritten statements" in docket entry 35-3, but the newsletter is neither of these. (Reply Br. at 2, n.1.) It more specifically attacks the

15

"handwritten and typed statements and letters" making up pages three through six of docket entry 35-3, but, while this document may be viewed as a typed statement, it is filed as page one of the docket entry.

Without an objection, the Court only inquires into whether using the evidence would create a "gross miscarriage of justice." *Wiley*, 20 F.3d at 226. Even though the newsletter lacks an authenticating affidavit, the newsletter itself is not patently inadmissible; properly authenticated, it may be admissible. Thus, with no objection, the newsletter remains as evidence supporting Ms. Metroka-Cantelli's position. *Powers*, 501 F.3d at 613 n.3 ("Despite these glaring deficiencies, we may still consider Powers's evidence because the Public Defender did not object to its competence below (or on appeal, for that matter)."). The Court need not evaluate the admissibility of the other items Ms. Metroka-Cantelli entered to support this contention because, with the newsletter remaining in evidence, she can show some evidence that the USPS was seeking Transitional Employees at the same time it declined to renew her contract.

Ms. Metroka-Cantelli has provided no evidence that the USPS actually filled the Transitional Employee position (as opposed to just running meaningless ads) and no evidence that the USPS reappointed people who were not pregnant or did not have FMLA leave upcoming. These shortcomings may be fatal to her case at trial, but, for the purpose of summary judgment, she has called the veracity of the USPS' claim that her termination was a result of a mandated reduction in force, as opposed to interference with her upcoming FMLA leave, into question. This question remains for a jury to decide. *Reeves*, 530 U.S. at 148; *Lindsay*, 578 F.3d at 422.

Thus, even if the USPS had invoked the *McDonnell Douglas* burden-shifting framework, Ms. Metroka-Cantelli's claim would still survive under the interference theory. The Court denies

16

the USPS' summary judgment motion as to Ms. Metroka-Cantelli's claim for interference with an FMLA benefit.

### B. FMLA Claims against the NALC Branch 118

In her complaint, Ms. Metroka-Cantelli alleged the NALC conspired with the USPS to interfere with her right to take FMLA leave. (Compl., Doc. 1 at ¶ 10.) In addition to the union's claim that Ms. Metroka-Cantelli opted to not pursue this claim, Ms. Metroka-Cantelli has not pointed to any evidence of a conspiracy between the union and the USPS and has not even argued that the two conspired to terminate her. Because it lacks support, the Court grants the NALC Branch 118 summary judgment on this claim.

### C. Breach of the Collective Bargaining Agreement against the USPS

Ms. Metroka-Cantelli claims that the USPS breached the collective bargaining agreement between it and the NALC by discriminating against her (that is, by terminating her and replacing her with a male employee). (Compl, Doc. 1 at ¶¶ 12–14.) When the government is the employer, plaintiffs must bring claims of discrimination under Title VII; it is the exclusive remedy for such discrimination claims. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976) ("The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated by the simple expedient of putting a different label on the pleadings. It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." (citation and quotation marks omitted)). Therefore, Ms. Metroka-Cantelli cannot bring her claim of employment discrimination as a breach of contract claim, and the USPS is entitled to judgment on this claim.

### D. Breach of the Duty of Fair Representation against the NALC Branch 118

In her third claim, Ms. Metroka-Cantelli says the NALC Branch 118 breached its duty to provide her with fair representation. This type of action provides a remedy when an employer wrongfully terminates an employee and her union "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). A "duty of fair representation" claim is a hybrid claim where the plaintiff "must not only show that [her] discharge was contrary to the [collective bargaining agreement] but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 165; *accord Driver v. U.S. Postal Serv., Inc.*, 328 F.3d 863, 868 (6th Cir. 2003). Because the union's action upends the employee's right to a normal grievance procedure in such a case, the employee is not held to the requirement that she must exhaust administrative remedies before filing an action. However, the Supreme Court explicitly adopted the six-month time limit found in the National Labor Relations Act section 10(b) as the time in which the employee must bring a hybrid action for breach of the duty of fair representation. *DelCostello*, 462 U.S. at 172; 29 U.S.C. § 160 (affording six months in which to bring complaints of unfair labor practices to the National Labor Relations Board). Put another way, if union misconduct abridges an employee's ability to grieve a termination within the statutory six months, *DelCostello* grants the employee six months from that misconduct to bring a duty of fair representation action against the union.

While it may be a question of fact to determine when the NALC Branch 118 failed to provide Ms. Metroka-Cantelli with adequate representation, the Union is correct that any cause of action must have accrued prior to Ms. Metroka-Cantelli filing a complaint with the NLRB against the union on April 4, 2011 because in that, she complained about the union's failure to file a

grievance. (*See* Doc. 35-11 (NLRB complaint and notice to the union of its filing).) Ms. Metroka-Cantelli's complaint pended with the NLRB until it was withdrawn on June 27, 2011, (Doc. 31-2), and she filed this action on January 31, 2012. The union asks that the Court not toll the time the complaint pended with the NLRB, but the Court need not decide this question; more than seven months passed between the withdrawal of the complaint at the NLRB and the filing of this action. Ms. Metroka-Cantelli's claim of breach of the duty of fair representation against the NALC Branch 118 is time-barred, and the Court will grant judgment on the claim to the union.

### E.  Violation of Ohio Revised Code Section 4112.02 against the NALC Branch 118

Ms. Metroka-Cantelli claims that the NALC Branch 118 discriminated against her in violation of Ohio Revised Code Section 4112.02(C), which bars discrimination by labor organizations. The union suggests the federal right to bring an action against a union for breach of the duty of fair representation subsumes this provision, but the Court need not decide that question because Ms. Metroka-Cantelli has pointed to no evidence that the NALC Branch 118 discriminated against her based on sex when it opted not to grieve her termination.

Even though Ms. Metroka-Cantelli may be able to show that the USPS interfered with her FMLA rights by terminating her (discussed *supra*), and, assuming she could show that NALC Branch 118 represented her (which the Union contends is not the case), she has not pointed to any evidence that the union's failure to grieve her termination was based on her sex. She has not claimed disparate treatment by the union or given any example of someone who was not pregnant or who was male receiving different treatment from the union. *See e.g. Kroh v. Cont'l Gen. Tire, Inc.*, 748 N.E.2d 36, 37 (Ohio 2001) (considering whether the plaintiff had shown that similarly-situated male employees were treated differently). Similarly, Ms. Metroka-Cantelli has pointed to

19

no other evidence indicating that the union acted or failed to act because of her sex. In fact, Ms. Metroka-Cantelli has called the union's conduct "incompetent bungling" and a "strong arm tactic," rather than discrimination. (Response, Doc. 35 at 15.) Therefore, Ms. Metroka-Cantelli cannot maintain her state law discrimination claim against the NALC Branch 118 and the Court will grant judgment to the union.

## V. Conclusion

For the reasons stated herein, the Court grants the USPS' summary judgment motion as to Ms. Metroka-Cantelli's second claim for relief (breach of the collective bargaining agreement) and denies the motion as to her first claim for relief (interference with her rights under the FMLA). (Doc. 33.) The Court also grants the NALC Branch 118's summary judgment motion as to all claims against the Union. (Doc. 30.)

Ms. Metroka-Cantelli's claim for interference with her right to take FMLA leave remains for trial against the USPS.

IT IS SO ORDERED.

                                                                                    s/ *David A. Katz*
                                                                                     DAVID A. KATZ
                                                                                     U. S. DISTRICT JUDGE